IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DENNIS JACKSON, LORI JACKSON,

     Plaintiffs,

    v.

ALLSTATE INDEMNITY COMPANY,

     Defendant.

2:25-CV-00746-CCW

## <u>OPINION</u>

Before the Court is Defendant Allstate Indemnity Company's Motion to Dismiss Plaintiff's Complaint, ECF No. 8. For the reasons set forth below, the Court will grant the Motion.

## I.  Background

This case arises from a dispute between Plaintiffs, Dennis and Lori Jackson, and their insurer, Defendant Allstate Indemnity Company, over a claim the Jacksons submitted for storm damage to their property. ECF No. 1-7. The allegations, taken as true, are as follows.

The Jacksons own a rental duplex in Pittsburgh, Pennsylvania which they insure through Allstate. *Id.* ¶ 6. The policy contains a "[s]ettlement [o]ptions" provision which states that, in the event of a covered loss, Allstate may either "repair, rebuild or replace all or any part of the damaged, destroyed or stolen covered property with the property of like kind and quality within a reasonable time[,]" or, alternatively, "pay for all or any part of the damaged, destroyed or stolen property[.]" *Id.* ¶ 9. The settlement options provision further provides that, if Allstate chooses to pay for the damaged property in lieu of replacing it, the total payout will not exceed the smallest of: (1) "the actual cash value of the damaged, destroyed, or stolen property at the time of loss[,]" (2) "the amount necessary to repair or replace the damaged, destroyed or stolen property with other

of like kind and quality[,]" or (3) the policy limit "applicable to the damaged, destroyed or stolen property." *Id.* ¶ 10.

On or about January 14, 2024, the Jacksons sustained wind damage to the siding on the righthand side of their duplex. *Id.* ¶ 12. The Jacksons submitted a claim and Allstate determined the loss was covered under the policy. *Id.* ¶¶ 13–14. Allstate subsequently valued the Jackson's loss at $6,353. *Id.* ¶ 16. In response to this estimate, the Jacksons contacted Allstate and asked whether it would pay to replace the entire siding on the home. *Id.* ¶¶ 17–18. Allstate informed the Jacksons that their policy, and Pennsylvania insurance regulations, only entitled them to replacement of the damaged siding. *Id.* ¶ 19.

The Jacksons then hired their own adjuster, Stephen Hnat and Associates, to assess their loss. *Id.* ¶¶ 26–27. Mr. Hnat submitted a report to Allstate assessing $37,457.02 in damage to the Jackson's home and stating that, because "the siding on this house has been discontinued, there is no other match out there to put your policyholder back in Pre-loss condition. Full replacement would be needed to give them a uniform appearance." *Id.* ¶¶ 28–29. Acting on the Jackson's behalf, Stephen Hnat exchanged email correspondence with various claim inspectors and supervisors from Allstate regarding the scope of the Jackson's loss. *Id.* ¶¶ 30–57. Over Stephen Hnat's repeated protestations, Allstate reiterated that the Jackson's policy entitled them to replace the damaged siding only and that Allstate was therefore standing by its initial $6,353 estimate for the Jackson's claim. *Id.* ¶ 35.

On May 5, 2025, the Jacksons filed suit against Allstate in the Allegheny County Court of Common Pleas, asserting one count of breach of contract and one count of bad faith. ECF No. 1

¶¶ 6, 10.  Allstate timely removed to this Court.[1]  Allstate now moves to dismiss the Complaint in its entirety.  ECF No. 8.  The Motion is fully briefed and ripe for resolution.  ECF Nos. 9, 11, 12.

## II.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do[.]"  *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level[,]" *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

---

[1] Allstate properly removed pursuant to 28 U.S.C. § 1441.  This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C § 1331, as the parties are diverse and the amount in controversy exceeds $75,000.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss.").

## III.    Legal Analysis

### A.    Plaintiffs Fail to State a Breach of Contract Claim

The parties agree that Pennsylvania law governs their dispute.  *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999) (holding when parties agree, either explicitly or implicitly, on the relevant law to apply, the district court in a diversity action shall apply that law).  To state a claim for breach of contract under Pennsylvania law, a plaintiff must show:  (1) the existence of a contract, including its essential terms;  (2) a breach of that contract;  and (3) resultant damages.  *Kelly v. Carman Corporation*, 229 A.3d 634, 653 (Pa. Super. 2020) (citing *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)).  In determining whether a breach has occurred, "the task of interpreting an insurance contract is generally performed by a court rather than by a jury." *401 Fourth Street, Inc. v. Investors Ins. Group*, 879 A.2d 166, 171 (Pa. 2005) (cleaned up).  Plaintiffs assert that Allstate breached the insurance policy by refusing to replace all of the siding on their home, including undamaged siding.  ECF No. 1-7.  Allstate contends that, under the "clear and unambiguous" terms of the settlement options provision, it "is only obligated to pay for the [siding]

that is actually damaged or destroyed" and has thus fully discharged its obligations under the policy.  ECF No. 9 at 8.

The Pennsylvania Supreme Court has set forth the principles of contractual interpretation for an insurance contract as follows:

> In interpreting the relevant provisions of the insurance policies . . . we are guided by the polestar principle that insurance policies are contracts between an insurer and a policyholder.  Thus, we apply traditional principles of contract interpretation in ascertaining the meaning of the terms used therein.  This requires our Court to effectuate the intent of the contracting parties as reflected by the written language of the insurance policies.  In this regard, the language of the policy must be considered in its entirety.
>
> If policy terms are clear and unambiguous, then we will give those terms their plain and ordinary meaning, unless they violate a clearly established public policy.  Conversely, when a provision of a policy is ambiguous, the policy provision is to be construed in favor of the policyholder and against the insurer, as the insurer drafted the policy and selected the language which was used therein.  Policy terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.

*Kurach v. Truck Insurance Exchange*, 235 A.3d 1106, 1116 (Pa. 2020) (internal citations and quotations omitted).

The Court concludes that the policy terms at issue here are unambiguous.  The settlement options provision of the Jackson's policy states that "[i]n the event of a covered loss," Allstate may either, "[r]epair, rebuild or replace all or any of the part of the *damaged, destroyed or stolen* covered property with property of like kind and quality[,]" or, instead, "[p]ay for all or any part of the *damaged, destroyed or stolen* covered property[.]"  ECF No. 1-7 ¶ 9. (emphasis added).  The provision further provides that any payment for covered property "will not exceed the smallest" of:  "(a) the actual cash value of the *damaged, destroyed, or stolen* property at the time of loss;  (b) the amount necessary to repair or replace the *damaged, destroyed or stolen* property with other of like kind and quality;  or (c) the limit of liability applicable to the *damaged, destroyed or stolen*

property." *Id*. ¶ 10 (emphasis added).  Repeatedly, the settlement options provision explicitly limits the scope of coverage to property that is actually "damaged, destroyed, or stolen."  The language in the settlement options provision is therefore not reasonably susceptible to Plaintiff's interpretation, under which the policy also covers the replacement of undamaged property when replacing the undamaged property is necessary to maintain a uniform appearance.

The facts of this case are similar to those in *Greene v. United Services Automobile Association*, 936 A.2d 1178 (Pa. Super. 2007).  In *Greene,* the Pennsylvania Superior Court interpreted an insurance policy provision that obligated the insurer to pay the smallest of either: (1) the applicable policy limit, (2) "the replacement cost of that part of the building damaged[,]" or (3) "the necessary amount actually spent to repair or replace the damaged building."  *Id*. at 1185–86.  The relevant provision further provided that, "[t]he replacement cost will not exceed that necessary for the like construction and use on the same premises[.]"  936 A.2d 1178, 1186. After a storm damaged certain shingles on the *Greene* plaintiffs' roof, they submitted a claim to the insurer-defendant.  *Id.* at 1182–85.  But because the exact shingles were no longer in production, the *Greene* plaintiffs sought coverage for the replacement of all the shingles on their roof, including the undamaged ones, to maintain a uniform appearance.  *Id.*  The court rejected the plaintiffs' argument that the provision's reference to "like construction" obligated the defendant to replace the entire roof.  *Id.* at 1186–87.  Instead, the court ruled that the defendant satisfied its obligations under the policy by replacing the damaged shingles with shingles of "similar . . . function, color, and shape[.]"  *Id.*

The Jacksons make two attempts to distinguish *Greene.*  First, the Jacksons point to differences between the language used in the provision at issue in *Greene* and the language used in the settlement options provision of their policy.  While the *Greene* policy provided for the

replacement of the damaged property with property of "like construction," the Jackson's policy provides for the replacement of the damaged property with property of "like kind and quality." ECF No. 11 at 10.  Second, Plaintiffs note that, in *Greene*, evidence was presented at trial regarding the availability of shingles that were similar, although not identical to the shingles originally installed on the Plaintiffs' home.  ECF No. 11 at 10.  But here, Plaintiffs argue, both "Allstate's INTEL report and [Plaintiffs' adjuster] state that similar siding is unavailable." *Id.*

Regarding Plaintiff's first argument, the Court is unconvinced that language providing for replacement of the damaged property with property of "like kind and quality" is meaningfully different from the language at issue in *Greene* providing for replacement with property of "like construction."  The key word in both clauses is "like," meaning that the policyholder is entitled to receive property that is similar, but not identical to the damaged property.  *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011) ("In Pennsylvania, when words of common usage are used in an insurance policy, they should be construed in their natural, plain and ordinary sense.").

Plaintiffs' second argument is also unavailing.  While the *Greene* court acknowledged testimony at trial regarding the availability of shingles sufficiently like the discontinued ones, *see* 936 A.2d at 1186, nothing in the opinion suggested this was necessary to the outcome.  Indeed, the *Greene* court stressed that its decision was based on the "clear[] and unambiguous[]" language of the policy and the "absurdity" of reading that language to require the insurer to replace the non-damaged portions of the plaintiffs' roof. *Id.*

Federal district courts have applied *Greene* to insurance policies with similar language to the policy provisions at issue here and have generally interpreted such policy language as requiring the insurer to replace or pay for the damaged portion of the property only.  *See Pellegrino v. State Farm Fire & Cas. Co.*, No. 12-2065, 2013 WL 3878591, at *4 (E.D. Pa. July 29, 2013), *aff'd*, 568

F. App'x 129 (3d Cir. 2014) ("The import of this language is clear—State Farm is only contractually obligated to make an actual cash value payment for property that is damaged. Indeed, nowhere in the policy does it state that if only a portion of property is damaged, and replacement of the damaged portion will not match the undamaged portion, State Farm will be obligated to replace the entire portion of that property."); *Enwereji v. State Farm Fire & Cas. Co.*, No. 10-CV-4967, 2011 WL 3240866, at *6 (E.D. Pa. July 28, 2011) ("[T]he Defendant has a coverage obligation for repair or replacement of the 'damaged part' of the property, i.e. the individual tiles that are cracked, missing, or askew. . . . [But] [r]requiring Defendant to pay for an entirely new roof would be a windfall for Plaintiffs and contrary to the public policy rationale for insurance contracts."); *Fazio v. State Farm Fire & Cas. Co.*, No. CV 16-1987, 2017 WL 1102713, at *6 (E.D. Pa. Mar. 22, 2017) ("The Policy clearly and unambiguously requires State Farm to pay the repair or replacement cost of the damaged part of the Property. . . . The Policy does not require State Farm to replace all the stucco on the entire Property."); *Grote v. Am. Econ. Ins. Co.*, No. CV 24-4979, 2025 WL 364068, at *4 (E.D. Pa. Jan. 30, 2025) ("[R]egardless of whether replacement materials are of 'like kind and quality' or 'equivalent construction,' the Policy does not cover replacement siding on undamaged portions of the home."); *but see Collins v. Allstate Ins. Co.*, No. CIV.A.2:09CV01824WY, 2009 WL 4729901, at *6 (E.D. Pa. Dec. 10, 2009) (Denying insurer-defendant summary judgment on plaintiff's breach of contract claim because of affidavit from plaintiff's adjuster stating that, "there are no slate tiles currently available on the market that are sufficiently similar in color, size and texture, to those on the [plaintiff's] home at the time of the loss so as to make them of 'like kind and quality' or 'equivalent construction' as required under the terms and conditions of the policy.").

Considering the clear language in the settlement options provision of the policy, and the Pennsylvania Superior Court's prior decision in *Greene*, Allstate was obligated to replace the damaged siding on the Jackson's home—nothing more and nothing less. Because Allstate has discharged its obligations under the policy, the Jacksons fail to state a claim for breach of contract. Furthermore, the Court is satisfied that any amendment of the Jackson's breach of contract claim would be futile. *See Palek v. State Farm Fire & Cas. Co.*, No. CV 20-170, 2020 WL 5077461, at *8 (W.D. Pa. Aug. 26, 2020) (Conti, J.) (amendment of breach of contract claim futile when the court has interpreted the contract against the plaintiff).

### B.    Plaintiffs Fail to State a Bad Faith Claim

To state a claim for bad faith under Pennsylvania law, a plaintiff must show, by clear and convincing evidence, that the insurer: (1) lacked a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis. *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). "Resolution of a coverage claim on the merits in favor of the insurer requires dismissal of a bad faith claim premised on the denial of coverage, because under the circumstances the insurer necessarily has a reasonable basis for denying benefits." *Palek*, 2020 WL 5077461 at *7.

Because the Court concludes that Allstate has discharged its duties under the insurance policy, the Jackson's bad faith claim necessarily fails. As with the breach of contract claim, the Court finds that any amendment of the Jackson's bad faith claim would be futile. *See Rice Enters., LLC v. RSUI Indem. Co.*, 705 F. Supp. 3d 460, 470–71 (W.D. Pa. 2023) (Horan, J.), *aff'd*, No. 24-1880, 2025 WL 1248813 (3d Cir. Apr. 30, 2025) ("Because the Court's analysis is based upon the policy language and allegations within the . . . lawsuit, any amendment . . . would be futile.").

**IV.    Conclusion**

For the foregoing reasons, Allstate's Motion, ECF No. 8, will be granted and the

Complaint will be dismissed with prejudice, as further set forth in the accompanying Order.


DATED this 19th day of December, 2025.


BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge


cc (via ECF email notification):

All Counsel of Record